This honorable appellate court for the second district is now open. The Honorable Justice Catherine Zenoff presiding, along with Justice Anne Jorgensen and Justice Mary Shostak. The case is number 2-19-0802. Eric K. Grant et al., plaintiff's appellees, versus Allison Rancour et al., defendants, Lucas & Associates Ltd., appellant. Arguing for the appellant Anne E. Onus. Arguing for the appellees, Michael C. Holey. Thank you very much. Good morning, counsel. Good morning, fellow justices. This is Catherine Zenoff speaking. Counsel, I'd like to thank you on behalf of the panel for being available to proceed with oral argument remotely today. Before we begin, just a word or two regarding our format. Just as if you were in the courthouse in Elgin, you will each have up to 15 minutes for your argument. The appellant will also have up to 5 minutes for rebuttal. As you heard, Mr. Kaplan has a buzzer or timer that he will operate and let you know when your time is up. You do not have to use all the time allotted. I would like to remind you that as is the practice of the Second Appellate District, we have all read your briefs ahead of time. What will be different this morning is that we will not interrupt your argument with our questions as we usually do. We felt that since this is being done remotely, it really would be too difficult to proceed in that manner. So we will save our questions for each of you until you have completed your arguments. That is, after the appellant argues, we will ask the appellant's counsel questions. And after the appellee's attorney finishes our argument, we will ask him questions as well. I would like to remind you that no one except the clerk is permitted to report today. Do either of you counsel have any questions before we begin? No, thank you. The appellant does not. Thank you. Okay. Thank you. Thank you. Thank you, Mr. Holey. All right, Ms. Olnitz, we'll hear you now. Thank you. May it please the court, my name is Andrea Olnitz and I represent the Contemnor appellant in this case. This case is about whether a court can order non-parties to a case to produce documents and answer discovery without first obtaining personal jurisdiction over them. It is about due process of law. In this case, the lower court did just that. And the Contemnor appellant, therefore, respectfully requests this court reverse and vacate the lower court's order of contempt of August 16th, 2019, as well as the underlying orders of February 25th, 2019, July 3rd, and July 17th of 2019, from which the contempt order arose. Your Honors, this matter arises out of a personal injury matter which occurred after a motor vehicle accident on August 20th, 2013. The plaintiffs in this case have claimed to sustain various bodily injuries, incurred medical expenses, and also claim they will require future care as a result of these injuries. Because of prior medical histories and disputed causation issues, the defense retained orthopedic and neurosurgical experts. The plaintiffs served written discovery requests pertaining to the defendant's expert witnesses to the defendant. Plaintiffs also sought, through these discovery requests served upon defendant Allison Randcor, to obtain answers to interrogatories and documents from two non-parties, State Farm Insurance, who is defendant's auto insurance carrier, and one of their in-house employee law firms, the Bruce Farrell Dorn law firm. Lucas Olmos & Associates is an independent law firm. We are not employees of State Farm. We have no relationship with the Bruce Farrell Dorn law firm. It is undisputed that neither of these entities ever filed an appearance in the case, nor have been served with process. It is undisputed that the plaintiffs never served subpoenas for production of documents upon either State Farm or Bruce Farrell Dorn. With regard to the standard of review in this case, whether a court has jurisdiction over a party or a witness to a case is a question of law, which is reviewed de novo. In my argument, I will speak to two main points. First of all, the court had no personal jurisdiction over the non-parties, State Farm Insurance, and Bruce Farrell Dorn. Therefore, the lower court's order of February 25th, 2019, was void. Secondly, any orders granting sanctions or contempt against the defendant or contemnor for willfully violating an order, which was In this case, the contempt orders require a review of the orders upon which the contempt order was based. That would include the February 25th, 2019 order in which the court ordered State Farm Insurance and Bruce Farrell Dorn Law Firm to answer interrogatories and provide documentation as to financial compensation of two experts who had been retained by the the production of documents and information by State Farm and Bruce Farrell Dorn is null because the underlying or the lower court did not have personal jurisdiction over either entity. Why? They were never served the process. A subpoena, which is indispensable to personal jurisdiction. No notice of a motion to compel or sanctions was ever served to State Farm or Bruce Farrell Dorn Law Firm. The mere knowledge that a lawsuit or an antagonistic motion is proceeding is not a substitute for service of process in this case. The defendant's law firm does receive cases from State Farm Insurance in which to defend its insurance pursuant to the However, the defendant's law firm, Lucas, Olmos and Associates, also has other clients that we represent. We have represented insured from another insurance company. We have represented transportation carriers. We are not an employee of State Farm Insurance. Therefore, we do not have within our control documents that State Farm Insurance as a corporation has. N. Ray Darcy, a case cited in our brief, stands for if there is no personal jurisdiction, any order that is entered is void and may be attacked at any time. The appellee has argued that the defense had waived the issue of personal jurisdiction, claiming that the issue was never raised in the underlying proceedings. That is untrue. The defense raised the issue of personal jurisdiction in written and oral argument. And additionally, as I indicated, whether a court had personal jurisdiction over a party is an issue which may be attacked at any time. Lucas, Olmos and Associates does not control State Farm Insurance or Bruce Farrell Dorn, nor does State Farm Insurance control the actions of Lucas, Olmos and Associates law firm. Lucas, Olmos and Associates law firm did receive some TIN reports which were voluntarily produced by State Farm Insurance during the course of counsel's reporting on the status of the litigation. And I would argue that this voluntary production of the TIN reports does not equate to submitting to jurisdiction or otherwise availing themselves of process by the court. Additionally, the appellee relies on Rule 216, Supreme Court Rule 216. And that rule is also mentioned by the such as a request to admit fact regarding the reasonableness of medical bills. That a party is to make a reasonable inquiry, which would include the party, their counsel, and their insurer. However, this speaks to answering the request to admit based on information as to reasonableness of medical bills. That rule in the Shibluski case cited in the brief does not extend to insurance company is thus a party and subject to the jurisdiction of the court. In this case, the plaintiffs failed to exercise powers under Supreme Court Rule 204 that they issue subpoenas to non-parties for deposition or production of documents. And thus, the court would have had jurisdiction. The trial court in this case indicated that it may give a jury instruction, IPI 5.01, that defendant failed to produce evidence at trial, which would be non-parties. As the lawsuit is filed against defendant Allison Rancourt, any judgment would enter against the defendant only. In closing, I respectfully request that the court find in reverse and vacate the contempt order of August 16, 2019. Reverse and vacate the February 25, 2019 underlying order from which the contempt order arose. And reverse and vacate the underlying imposing monetary sanctions. Thank you. Thank you. Justice Jorgensen, do you have questions you would like to ask at this time? Really, my question is, do you have any response to our-if we find that there is jurisdiction, do you have any further comments? Well, Your Honor, if you were to find that somehow there was jurisdiction over these non-parties, I would submit that you could also find that the trial court abused its discretion when it ordered sanctions against defendants for willfully not complying with the order. For some of the reasons that I stated earlier, that we are not-we are not employees or we have no control over State Farm Insurance or this other law firm. And so even if you found that there was jurisdiction, I would say that the court abused its discretion. Excuse me. Do you believe that the order was directed to State Farm or was directed to Lucas? I believe that the order was directed to the-if you're-are you referring to the February 25, 2019 order? The original order. Yes. I believe that that order was directed to both Lucas Olmstead Associates and State Farm and Bruce Farrell Dorn. And the court has the power to order Lucas, correct? Yes, that's correct. Okay. I have no further questions. Thank you. Justice Shastook? Thank you. Is there any difference in discovery between the request to admit and a request to produce? Yes, Your Honor. There is a difference. In a request to produce pursuant to Supreme Court Rule 214, those are served upon a party and a party then has to respond to those. If they don't, they're subject to motions and they have to produce-the party must produce documents within their control or custody. 216, I think as I was indicating earlier, requires one to make a reasonable inquiry into information in answering requests that would be admissions to tailor or It's based on the knowledge of the attorney, correct? 216? 216, yes. So who does-are you implying that the defense had no ability to acquire this knowledge from State Farm? We have a better permission to get this information from State Farm. Well, I think we could get information from-some information from State Farm, but as far as producing documents, reports, invoices, and that type of thing for other cases and other- we would not have any ability to compel State Farm to produce those documents. But the court has the ability to compel you to produce those documents, correct? Yes, if they're in my custody or control. Right. And if you can ask for that information from them, would that not be in your control? Well, I think that whether or not it's in my control would require looking at whether or not I can compel someone to produce documents or whether they would have to respond to that. They often-we have had to issue subpoenas to State Farm for documents pertaining to property damage, and they will not voluntarily produce things unless they're- Did they-did you ask them to produce in this case? Or did you just proceed with the friendly contempt finding? I reported on the-on the status of the litigation to them and then proceeded with the friendly contempt finding. After we had- Did you ever file a motion-did you ever file a motion to reconsider or clarify the court's finding? I did not, Your Honor. I have no further questions. Thank you very much. Thank you. I have several questions. The-we were talking about the Rule 216 and 214, and Justice Shostak asked you about the differences, and you gave us-you gave her an answer to that question. But isn't that-isn't the difference really without any distinction here? Because both of these key cases, Shablowski and Olsey, both hold that a party has reasonable control over and ensure the information it possesses. And your position is that these two cases really don't apply here because they are confined to Rule 216 motions to admit. But how can a party have control over a document for purposes of Rule 216 but not control over that same document regarding a 214 request to produce? Well, Your Honor, I believe that the difference in Supreme Court Rule 216 is that it requires you to make a reasonable inquiry. It does not afford you the ability to, or, you know, me as counsel, to demand that an insurance company produce documents by virtue of what they do in the industry and how many medical bills and such that they see. They would have some reasonable knowledge as to what might be a reasonable bill amount so that presumably plaintiffs would not have to bring in foundational experts to make a trial a lot longer and reduce some of the time and the issues for the trial. I think that is different than a 214 request to produce documents in this case where normally subpoenas are issued for production of documents or to require someone to submit to a deposition. And I think that's the difference between 214 and 216. Now, you conceded that the February 25th order was directed at the defendant as well as State Farm. And is that, so we saw that State Farm did voluntarily submit some reports to the court at a later point. How did that not constitute a waiver of service of process? Well, Your Honor, I believe that there is a case that I speak to in the brief, the prosapiens case that indicates that mere knowledge of a lawsuit or an antagonistic motion is not a substitute for service of process. And in this case, in the court's order required production of documents from two non-parties, State Farm Insurance and a law firm, Bruce Farrell Dorn. And their voluntary production of some PIN reports later in the proceedings because they had been apprised of the status of the litigation does not equate to service of process or a waiver of notice. You have to give proper notice and service of process in order for a non-party to be within the jurisdiction of the court. And that was not done here. Well, but they proceeded without it. They proceeded in spite. So why, again, why isn't that a waiver? I don't, I think that just offering some documents without being properly within the case does not constitute a waiver of service of process. Let me ask something else. You contend in your brief that the contempt order was entered only so that you could appeal the discovery order and that you did not willfully disregard the court's order. And you did indicate today that you do believe that the court's order, although I'm not sure this was the position you initially took, did pertain to the defendant. I'm sorry. I think you did. Well, I'm not sure. But at any rate, my question is, did you not refuse to even approach state firms and attempt to comply with the discovery order, although you indicated today that you believe the discovery order was directed at your law firm? And since you didn't even approach state firms, how is that not willful disregard of a court order? Well, Your Honor, without getting into, you know, conversations that could be privileged communication, I reported on the status of the litigation and it's my position that if there was no service of process and state farm insurance and the Bruce Farrell Dorn Law Firm were not within the jurisdiction of the court, whether or not I asked them to produce anything, they did not produce anything. And if the order was void to begin with, pardon me. Well, they did produce material. They did produce, they did voluntarily produce some ten reports, but that was not, that was not something that I requested that they produce. They report on status of the status of the litigation and did not request those. They came to me and said, okay, in your brief, you indicate that the defendant was sanctioned for not producing documents, not within her control. But don't these orders reflect defendant was not sanctioned for not producing, but for refusing to make an effort to comply with the discovery order. Isn't that what the thrust of the trial court's orders were, certainly given the fact that the trial court clarified the meaning of the orders, at least on one, if not two occasions, and gave additional time for compliance? Well, Your Honor, I think that that's true that the order was entered with the sanctions that on the basis that defense willfully did not comply with the order. However, as I indicated in my argument in the lower court, with respect to what the defendant was able to do and what we had within our custody and control, we made substantial disclosures and supplemental disclosures of a lot of information to the plaintiffs. And the lower court even indicated that they reviewed everything, thought we had made, they had substantial information with which to cross-examine the experts. If the underlying order was void for lack of personal jurisdiction, then I would submit that it was not willfulness on the part of defendant to not produce documents that we had no control or ability to compel the insurer or the other law firm to produce. Okay. I don't think I have any other questions at this particular time. Thank you, counsel. Thank you. Mr. Holey? Good morning, Presiding Justice Zinov, Justice Shostak, Justice Jorgensen, opposing counsel Olmos. May it please the court. The circuit court properly exercised its discretion in finding defendant, attorney, and contempt of court on August 16, 2019, and ordering defendant to pay plaintiff's attorney fees and costs as a Supreme Court Rule 219 sanction on an ambiguous February 25, 2019, order. The standard of review in this case is that of abuse of discretion. The Katsuras v. Riviera case, second district case, the standard of review of decisions imposing sanctions for violation of discovery rules is whether the trial court abused its discretion. And that abuse of discretion standard is appropriate a court abuses its discretion when its ruling is arbitrary, fanciful, unreasonable, or whether no reasonable person would take the view adopted by the trial court. The standard of review is highly deferential to the trial court. It's well settled that the courts of review may sustain contempt in discovery orders on any ground which are called for by the record, regardless of the grounds relied upon in the court order that was entered. Importantly, I noticed in Appellant's reply brief that there was absolutely no response to Appellant's argument that the circuit court's contempt and sanction orders should be affirmed as an appropriate discretionary exercise of its inherent authority to control its docket. No response. Under the Cronin case, the trial court has an inherent authority to control its docket and impose sanctions for failure to comply with the court. We've cited the Dolan case, Dolan v. Callahan, a number of times in the appellate brief. And in particular, with respect to this argument, paragraph 65 is appropriate. The court ruled that apart from Rule 219, the circuit court also has the power to sanction O'Callaghan pursuant to its inherent authority to control its docket. The trial court has inherent authority to control its docket and impose sanctions for failure to comply with the court order. Recognition of the court's inherent authority is necessary to prevent undue delays in the disposition of cases caused by abuses of procedural rules and also to empower the court to control its docket. This case is similar to O'Callaghan. O'Callaghan was not a party to the lawsuit. The court ruled that it was inappropriate. Actually, the order in the O'Callaghan case was specifically, the sanctions were specifically against the non-party, Monsieur O'Callaghan. So the personal jurisdiction argument, I think, from the defendant in this case does not hold weight. With respect to this particular action, on July 17th, 2019, the actual order entered by Judge Murphy in the circuit court states, for the reasons transcribed on the record, the court awards plaintiff reasonable attorney's fees and costs as sanction for defendant's deliberate abuse of the discovery rules set forth in plaintiff's motion for sanction. The motion for sanction, and I want to be very clear on this, was not just that the defendant did not produce certain documents. In this particular case, on March 22nd, 2019, defendant's attorney filed a second amended interrogatory answer to respond to the February 25th, 2019 order. In that second amended signed and prepared by defendant's attorneys, it's a complete absolute fabrication of what the February 25th, 2019 order stated. In that March 22nd, 2019 amended interrogatory answer signed by defendant's attorney, it states, quote, if plaintiff seeks documents from the law firm of Bruce Earl Dorning Associates or state firm insurance, plaintiff should issue subpoenas to these entities in accordance with paragraph six of the court's order of February 25th, 2019. It is absolutely not what the February 25th, 2019 order stated. It stated the exact opposite. In addition, there were other items in that February 25th, 2019 order which were not complied with. For example, the original order on February 25th, 2019 called for documents for the years pertaining to 2016, 2017, 2018, and 2019. It also called for the depositions, the defendant's costs of those particular rule 213F3 ordinances. So, in terms of the abuse of, the willful abuse of the court's order, that was clear on the face. It's not only failure to produce certain documents. I think it's brought out in the question by the justices. Producing documents and information within a defendant's reasonable control, it has been well settled that a defendant's insurer is included in those within a defendant's reasonable control. The 2003 case of Sabluski v. Dotson, page 349, in deciding a party's duty under rule 216, we are guided by how Supreme Court rule 213 has been construed. Rule 213 has been interpreted to require a party to answer fully in good faith to the extent of his actual knowledge and information available to him or to his attorney. This is important in this case because this pertains to defendant's rule 213F3 controlled experts. We're not talking about some independent witness. We're not talking about a fact witness. We're talking about a controlled expert. And under that circumstance, with understanding that 216 is related to rule 213, the court in Sabluski stated, to ensure the laudable purpose of rule 216 is accomplished, the party has a good faith obligation to make a reasonable effort to secure answers to requests to admit from persons and documents within the responding party's reasonable control. In this case, that would include the defendant's attorney, an insurance company, investigators, or representatives. So that statement, which also they said we believe this finding reflects the long accepted practice of trial attorneys in the court of Illinois pertaining to persons and documents. Sabluski was followed up by the O'Leary versus sports venture case in 2010 and affirmed that specific finding in the Sabluski case and stated further, quote, so defendant knew what her injuries were and with its access to its insurance company and the insurance databases of claims and necessary treatments and expenses could make a pretty good guess at the reasonableness of expense and treatment claims and can test those if necessary. We believe that the trial court fashioned an appropriate remedy to the breach involved here. It's clear that the court could have barred defendant's witnesses from the trial. He did not do that. The judge, Judge Murphy, fashioned a very reasonable approach in this case for the rules and the violations. Not only was it the court's inherent authority to do so, it was also rule 219C allows that the court can find any person at the instance of or with the party failure to comply with the court's orders. The Dolan court absolutely went through that analysis. That analysis is consistent with this situation. In this situation, we have a collusion between State Farm and the defendant's attorney that I believe in the questioning, there was a reference to how did these TIN reports magically appear on August 2? And the response was they just appeared. There was an analysis done, a hearing held on August 16, whether or not the production of these TIN reports, whether or not they cured the July 17 sanctions order. There was a hearing on that. And the court ruled specifically the order states on August 16, 2019, the court finds that the court's July 17, 2019 order has not been cured by the seven pages of TIN payment detail reports tendered by plaintiffs. Justices, we are not here talking about some theoretical fanciful idea of collusion. We have a specific example. We read what is in the TIN report into the record on the August 2, 2019 transcript. And according to the TIN report for Dr. Goldberg, apparently there were 17 claims that State Farm paid over $136,466.13 in 36 transactions. The defendant did not produce any of the underlying documentation. All the defendants provided prior to Dr. Goldberg's deposition in January of 2019 was some information regarding six claims, not 17. There has been no production of the underlying documentation regarding these TIN reports. That is the basis of the judge's ruling that the production of those TIN reports did not satisfy during the July 17, 2019 order. So it is not a theoretical exercise as to what is going on relative to the harm to the plaintiff's case in terms of proceeding with further depositions and further evidence depositions, further trial testimony of these witnesses. The harm caused by these undue delays, these deliberate wanting of the discovery rules has been that the trial has been delayed. As of now, the trial is set for August 31, 2020. This has caused my clients severe prejudice going through this whole process. We believe that the defendant pursuing this matter, given the abundance of case law... I'll just wrap up real quick. In conclusion, the plaintiffs respectfully pray that this court affirm the order content of August 16, 2019 and affirm entry of the monetary sanctions of $25 per day dating back to August 19, 2019 to present, granting a plaintiff's motion for sanctions on July 17, including the fee petition submitted on August 30, 2019, and request for sanctions for filing a frivolous appeal pursuant to Rule 375B. Thank you. MARY JO GIOVACCHINI Thank you, counsel. Justice Jorgensen, your question? JOSEPHINE J. JORGENSEN Here's my question. You know, you are premised on the proposition that defendant has reasonable control over both State Farm and the employee firm, correct? MARY JO GIOVACCHINI Correct. All right. So what is reasonable control? We heard counsel for appellant argue that State Farm does not easily give off these documents. So my question is, what is reasonable control and what is a reasonable effort by defendant to obtain the documents? JOSEPHINE J. JORGENSEN Yeah. Thank you. Thank you for the question, Justice Jorgensen. I appreciate it. Unfortunately, in this case, I think the court hearing testimony has made it abundantly clear that no effort was made to request anything from State Farm. In fact, on July 17th, the court, Judge Murphy, contemplated perhaps an affidavit from State Farm indicating that they had conducted a reasonable inquiry into the matter. Now, the fact that they produced something on August 2nd, 2019, affirms that point. They do have material and they did produce it in this case. MARY JO GIOVACCHINI All right. But hold on just a second. If State Farm produced something, doesn't that negate your argument that defendant here did nothing? Because whatever conversations went on are clearly outside of our record here. But what I have is defendant who is told to get certain documents, those documents are tendered. So there must have been some effort. Wouldn't that be a reasonable assumption to make here? MARK GAFFNEY I think counsel for defendant has been really trying to straddle a very narrow fence post here. I think her response to the questioning was that they magically appeared. She didn't request for anything. She didn't request anything. She said that she told them about the status of the case and the documents magically appeared. So I think what was at least incumbent upon the defendant to do was to at least have an affidavit from someone from State Farm indicating what search had been conducted and what materials exist. MARY JO GIOVACCHINI But that's my, that really gets back to the heart of my question. Where do we draw the line on reasonable effort? Like the court says I want an affidavit. State Farm doesn't want to give you an affidavit. At what point have we accomplished or has any defendant accomplished reasonable effort? Well, to come back, State Farm won't give me these documents. Would that be reasonable effort? MARK GAFFNEY Well, I would submit, Your Honor, that nothing in the record indicates what was done. Some seven pages of documents just magically appeared. So I would submit to you, Your Honor, that it's something more than that.  MARK GAFFNEY And to reasonable control, you would think involved some type of verified statement of some reasonable search that was done to comply with the court's order. That clearly wasn't done. That was contemplated by the court. MARY JO GIOVACCHINI Okay. Thanks. That was my question. MARY JO GIOVACCHINI Thank you. MARY JO GIOVACCHINI Just a sec. MARY JO GIOVACCHINI Hello? MARY JO GIOVACCHINI Okay. I'm going to get that mute button off. As you said, we're all getting used to this. So your indication then, based upon, I'm not even talking about control of the defendant over State Farm, are you indicating the trial court did have jurisdiction over State Farm or Blue Sparrow, or is that not necessary? MARK GAFFNEY I don't think it's necessary, Your Honor, based on the rules in the case law. MARY JO GIOVACCHINI Okay. And you indicated that our standard of review is an abuse of discretion, correct? MARK GAFFNEY Correct. MARY JO GIOVACCHINI How about if we were reviewing the correctness of the ruling of the trial court's judgment? Would that not be de novo? MARK GAFFNEY I'm sorry? MARY JO GIOVACCHINI If we were reviewing the correctness of the ruling of the trial court, wouldn't that be de novo? MARK GAFFNEY Yes, potentially. I think you may be referring to the NOSCA case, the Supreme Court case. But the distinction with that case was that they were deciding whether the disclosure of mental health information was prohibited by a statutory discovery privilege and whether that exception applied. That clearly was purely a question of law. In this case, I believe that it's very clear that this is a review of a violation of the discovery rules and the discovery abuse relative to the trial court's order. So I think it's a clear abuse of discretion. MARY JO GIOVACCHINI Okay. MARY JO GIOVACCHINI Standard. MARY JO GIOVACCHINI Is there a way that you feel the list of the cases, the cases, the numbers of the cases, the counties of cases, the firms, the amount of compensation, your opponent indicated that that was basically, from what I can understand what she's saying, the hardship? Does that the relevance outweigh that hardship? And is it a hardship, quite frankly? MARK GAFFNEY Yeah, I don't think there is a hardship relative to a controlled expert witness. I think the case law is abundantly clear. When you're talking about a controlled expert witness, we should be allowed wide discretion in terms of your cross-examination of those witnesses. MARY JO GIOVACCHINI Okay. Now, there was a contempt finding, and it was clearly on a friendly contempt. It was clearly on a friendly contempt. She was going to, you know, they were going to, how do they say, run it up the flagpole and see what happens. So the friendly contempt, would it be improper for us to vacate at this time after we rule? I mean, you're asking for three, you're asking for sanctions in this case, correct? Isn't it clear that this was a friendly contempt to try and get the ruling of this court on these types of requests? MARK GAFFNEY I can't get within Judge Murphy's head how unfriendly it was. It's clear that before August 16th, we were before Judge Murphy 12 times, Justice, 12 times. And not once did counsel attempt to do a motion to reconsider on any front. At no point in time did defense counsel file a brief entitled, Trial Court Lacks Personal Jurisdiction, cited no case law that, you know, trial court lacks personal jurisdiction. It was on the eve of trial that they filed the notice of appeal. Okay. And that caused the trial to get continued. They filed a motion to continue the trial. And so now, my clients are set for a trial that was, you know, eight months after the October trial date. So there's significant prejudice to my client. And I would submit to the court that based on the case law, based upon the rules, the rulings of the court, the eminently reasonableness of how the trial court approached this, I think sanctions are appropriate. And I would not agree to vacating the sanctions in this case. Okay. That's fair. I don't have any other questions at this time. Thank you very much. I think everyone here has answered those. Thank you. Thank you. This is Justice DeMoss. I do have a couple questions. You quoted the Cebulski Court. I believe you said it was page 349. I didn't quite catch the page number. But my question is, and in that quote, there was a reference to Supreme Court Rule 213. However, has any other court or authority in Illinois applied the reasoning of Cebulski or this Olsey case to any of the discovery rules beyond Rule 216? Well, I mean, the Cebulski case in itself on page 349 does refer to Rule 213. And this particular issue revolves around a 213F3 witness. But beyond that, I have not updated my research since the filing of those briefs. So I'm not sure. Okay. When this became an issue, that is, the noncompliance by State Farm, why did you not just go ahead and serve subpoenas on State Farm and Bruce Farrell as that is a traditional method of obtaining discovery from non-parties, is it not? I lost you on the question. Can you repeat it, please? Sure. A traditional method of obtaining discovery from non-parties is to issue a subpoena. Why did you not go ahead and serve subpoenas on State Farm and Bruce Farrell? Well, precisely for the arguments that I set forth above, that it was not necessary to do so based on the law and based on the fact that this is a controlled expert witness. And quite frankly, I mean, what played out is precisely the reason why you request this information through the parties in the case. I mean, now we have information that is inconsistent. The State Farm PIN documents, just looking at those documents, the numbers, so the gross numbers involved for each of the years do not match up with the 1099 forms that were produced, for example, at Goldberg's deposition. So there's significant information that has been withheld from the plaintiffs in this case, not only the backup information pertaining to these PIN reports. Okay. Is there any evidence in the record that Lucas Olness actively colluded with State Farm? The only evidence that we have is that the, as I think Ms. Olness identified today in oral argument, that the TIN reports magically appeared in August of 2019. Well, that's from that information, correct? Correct. In fact, the trial court noted, and I believe opposing counsel mentioned that the trial court indicated, and I believe it was on July 17th, that you had been provided with a substantial amount of cross-examination material. Isn't that correct? It is true that we were provided with some information. Certainly pursuant to the 22519 order, we were supposed to even get information from 2019. And even as of today's date, in May of 2020, we've been provided no information for either of the experts for 2019. So while we were provided some information, I'll agree with that, we were not provided with all of the information. And in particular, the backup documents pertaining to these PIN reports, which for Dr. Goldberg, we indicate 17 claims over a several year period amounting to $136,466.13 just for State Farm expert work. And then for Dr. Musashio, $25,374.50 for eight claims over a multi-year period. Well, while you describe what you received as some material, I believe that would be appropriate for July 17th order for the reasons transcribed on the record, the court awards plans, reasonable costs, et cetera. And the transcript really does use the word substantial. In fact, my reading of it indicates the court said, well, plaintiffs should have received what the court ordered. Plaintiff has a substantial amount of cross-examination material. So the trial court, notwithstanding allowing fees and costs, did make that statement and believe that there was a substantial amount of cross-examination of material provided. I won't disagree with the statements by the trial court. I'd only point that to the admonition and Sanchez versus the Black Brothers Company that, quote, the expert witness is usually a hired partisan. Moreover, it's unlikely that he could be successfully prosecuted for perjury on the basis of his opinion testimony. Thus, while experts opinion has the sanction of an oath, it lacks the substantial safeguard of truth that may be applied to the testimony of other witnesses. For these reasons, counsel must be given the widest possible latitude during cross-examination to demonstrate any interest, bias, or motive of the expert witness to testify. I believe that the plaintiff has not been granted that information. MARY JO GIOVACCHINI Okay. Thank you. I don't have any other questions. So at this point, Ms. Onus, you have time for rebuttal. SHARON ONUS Thank you, Your Honors. I will start out by saying that in terms of the question to plaintiffs, why did they not just serve subpoenas to State Farm and Bruce Ferrell Dorn as non-parties? As Your Honor noted, that is a traditional form of requesting discovery from non-parties. If that had been done, then the counsel for those two entities would have been able to come in and indicate if they thought the request or the subpoena was overbroad or what they had and what they could produce. So I find it rather disingenuous of the plaintiff's counsel to say that they have not received enough documents or documents that they needed to cross-examine when they have, number one, received, as the trial court noted, when he looked at what all they've been given, substantial documentation within which to wanted the information. Why did they not issue then subpoenas? Why did they proceed with trying to get the information through defense counsel, who it is undisputed is not an employee of either of these two entities and have no legal power to compel them to produce anything? The other thing that I wanted to point out was with regard to the other court in Illinois has extended the Shklovsky ruling with regard to 216 and getting information from a party's insurer, a party, and the party's attorney. I have not seen any cases that have extended that to production of documents or discovery requests or answering interrogatories. The February 25, 2019 order in this case requested and ordered that two non-parties be required to answer interrogatories and to produce documents. That is a far cry from what those two cases hold and I have not, I have seen no case that extends that to facts like this case. The other thing I wanted to point out with regard to the Dolan case is that in that case, that case is very distinguishable from the facts in this case. In the Dolan v. O'Callaghan case, Mr. Dolan was originally named a defendant and later dismissed, but he was a deponent who sat for at least three depositions and was a president, corporate representative, and majority shareholder of the defendant law firm. So that court properly held he had submitted to the jurisdiction of the court and rejected his jurisdiction argument. That case bears no resemblance to the facts of this case and it does not support plaintiff's attempts to rebut our jurisdictional arguments to this court. With respect to the 10 reports, I would initially point out that the 10 reports are not actually a part of the record, but the numbers and the amounts that are referenced by plaintiff's counsel, they include all of the 1099s that the plaintiff's counsel were provided from both of these two doctors had 1099s from State Farm in them. Some of those payments could have been made as treating physicians, but again, defendant and defendant's law firm turned over everything that we had that was responsive to the interrogatories and requests to produce with regard to these two experts of ours. So in the last thing that I will speak to... Thank you, Your Honor. I hear the time is up. If you would like to make your last point, go ahead and do it quickly, please. Hello? Hello. Yes. I also wanted to point out that the trial continuances were not done at the motion of the defense. The first one was not. That was agreed to. That's in our brief. The second one was because of the pending appeal and the danger of the court's indication to us that a 5.01 missing evidence instruction could be given. That is prejudicial. Thank you. Thank you. Justice Jorgensen, do you have questions? It seems that you are distinguishing between perhaps, excuse me, perhaps tendering documents as requested as opposed to a complete answer to interrogatories directed at a non-party, albeit directed to you, but the interrogatories and answers thereto would come from a non-party. Are you drawing that distinction? And if so, on what basis? Well, I am drawing that distinction, Your Honor, and on the basis of the fact that discovery requests are propounded to parties, not to persons that are not subject to the process and have not appeared and have not been served with process. The 214 and answers to interrogatories, those are requests that parties have to answer. And whether or not the defendant herself would have any way of compelling or requiring non-parties to respond to discovery requests, that is the basis for the distinction. But doesn't that continue to go back to making reasonable efforts to compel the answers from entities or non-parties who are under your control? I mean, do you continue to dispute that State Farm was under the control of the defendant? Yes, Your Honor. I dispute that State Farm was under the control of the defendant. And you base that on just the jurisdictional argument? I base it on both a jurisdictional argument, but I also base it, Your Honor, on the fact that in the years of doing this type of work, as an outside law firm, we, State Farm does not control, you know, our, they have no control over us. They may pay the fee bills as a result of the contract between them and their insured, but they do not control us, nor do we control State Farm. If we were to ask for something from them with regard to another case or anything outside of the one claim that we're working on, we cannot get that. The only way that we could get that would be to issue a subpoena, and we have had to do it on multiple occasions. Right. Why didn't you do that here? Well, Your Honor, I guess because it was not my, it was not my discovery request. That certainly wouldn't be in the record, so I take that back. Okay. That's all I have. Sure. Thank you. Justice Shostak? Yes. If you had a, if you had information that you wanted from State Farm that would assist you in your representation of your client, that being State Farm insured, you would just ask them for that information, or would you have to subpoena it? Well, it would depend on what that information was, if it was in regard to the specific claim that we were, and the insured. It would, if this information would assist you in your representation of that client, their insured, would you have to subpoena it? Yes. Regardless. Yes, I would. You would have to subpoena the information. That's correct. If the court ordered you... That's correct. They would not... In this case, the court ordered you to turn something over, how would you get it from State Farm, besides filing for a friendly contempt? How else would you be able to get it? The only other way that I would be able to attempt to get information or documentation from them would be to issue a subpoena for that information or documentation. And who pays you your fees? In this case, that would be State Farm Insurance. I have no further questions. Thank you. Thank you. I just have, this is just a thing, I just have one question. While you indicated, again, in response to some of the prior questions, I think one of which was mine, that there isn't any other court in Illinois that appears to have applied the reasoning of Schabowski to any other discovery rules beyond 216. But how do you respond to the quote that counsel gave us from that case? And I actually have it in front of me now. So, the court said, in deciding a party's duty under Rule 216, we are guided by how Supreme Court Rule 213 has been construed. And 213, of course, being written interrogatory, that's my parentheses. Rule 213, and I'm quoting again, has been interpreted, quote, to require a party to answer fully and in good faith to the extent of the actual knowledge and the information available to him or to his attorney. So, how do you respond to the fact that the Schabowski court didn't seem constrained by the fact that it was just looking at Rule 216, but looked and was guided by other Supreme Court rules? Why shouldn't that principle apply here? Why should it matter that no other court now has applied this reasoning, given the language in Schabowski? Well, Your Honor, I believe that the difference here is when you read the portion that you read, that the court was looking at 213 or interrogatories, and that the, that party is required to make a reasonable inquiry or effort to obtain information within its custody and control. In this case, if I were to, I, we did give all of the information and answered all of the interrogatories with regard to the information that was in, within our custody and control. The, any other information to be obtained from State Farm Insurance about other cases, other insurers, other, other lawsuits, that is not information that could be said to be within our custody and control. And I think that that, that is the difference. But yet, these were your 213 control witnesses that the information was being sought about, right? From State Farm. Doctors Goldberg and Masaccio. Yes, that's correct, Your Honor. And, and as part of who is under our control, who's under our control are our 1099's financial information. Those were all provided to opposing counsel. Those are the documents and the things that are within our control within the controlled expert that does not extend to a non-party entity who may have other information that could have been sought by subpoena but was not within our control or custody. Thank you. I do not have any other questions. At this time, I would like to thank both counsel for participating in this oral argument this morning. The court will take the matter under advisement and render a decision in due course. The argument will be posted as others are also, other in-person arguments were posted. This will be posted as well, although it's being done remotely. At this time, again, the court thanks everyone for their participation and we stand adjourned for the day. Thank you very much. Bye. Thank you. Thank you, Your Honor. Thank you. You're welcome. Bye-bye.